668 F.2d 740
 Harold L. JARVIS and Janet R. Jarvis, his wife
v.
Raymond E. JOHNSON, K & L Builders and Gene C. Lenhart
v.
Lois E. GILLETTE.
Harold L. JARVIS and Janet R. Jarvis, his wife
v.
Michael P. KIENLE.
Appeal of Harold L. JARVIS and Janet R. Jarvis, his wife.
 No. 80-1951.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 6, 1981.
Decided Jan. 11, 1982.*
 
 John G. Gent (argued), Cygne L. Nemir, Quinn, Gent, Buseck & Leemhuis, Inc., Erie, Pa., for appellants.
 John W. Beatty (argued), Timothy J. Lucas, Knox, Graham, McLaughlin, Gornall & Sennett, Inc., Erie, Pa., for appellees Raymond E. Johnson, K & L Builders, Gene C. Lenhart and Michael P. Kienle.
 Michael V. Gilberti (argued), Eric N. Anderson, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellee Lois E. Gillette.
 Before HUNTER and GARTH, Circuit Judges, and SAROKIN, District Judge**.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 This appeal requires us to determine whether Rule 238 of the Pennsylvania Rules of Civil Procedure, which provides for prejudgment interest in tort cases, must be applied in a diversity action brought in a federal district court in Pennsylvania.
 
 
 2
 The district court held that Rule 238 was a "procedural" rule and that therefore prejudgment interest was not available in a federal court under the doctrine first enunciated in Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Jarvis v. Johnson, 491 F.Supp. 389 (W.D.Pa.1980). Two other federal district courts in Pennsylvania have since come to the opposite conclusion, and have applied Rule 238 in the cases before them. Bullins v. City of Philadelphia, 516 F.Supp. 728 (E.D.Pa.1981); Renner v. Lichtenwalner, 513 F.Supp. 271 (E.D.Pa.1981). Each of these opinions was filed prior to the opinion of the Pennsylvania Supreme Court in Laudenberger v. Port Authority, --- Pa. ---, 436 A.2d 147 (Pa.1981), filed on October 29, 1981, which analyzed and upheld the validity of the Rule under the Pennsylvania Constitution.
 
 
 3
 After considering Rule 238 against the background of the policies embodied in the Erie doctrine, we conclude that Pennsylvania Rule of Civil Procedure 238 must be applied by the federal courts sitting in Pennsylvania. We thus reverse the district court's order of May 28, 1980 which denied plaintiffs' motion for prejudgment interest.[1]
 
 I.
 
 4
 On July 18, 1977, while passengers in an automobile owned by their daughter, Lois E. Gillette, plaintiffs Harold L. Jarvis and Janet R. Jarvis were injured when the automobile in which they were traveling was struck from behind by a vehicle driven by defendant-appellee Raymond E. Johnson. The accident occurred on Route 90 in Erie County, Pennsylvania. The Jarvises, citizens of California, thereupon brought a diversity personal injury action in the U. S. District Court for the Western District of Pennsylvania against Johnson; K & L Builders, the partnership that owned the vehicle driven by Johnson; and K & L's partners, Michael V. Kienle and Gene C. Lenhart; all citizens of Ohio. The defendants in turn joined Gillette, a citizen of Indiana, as a third-party defendant.
 
 
 5
 After trial, the jury found the defendants to be 70% liable and the third-party defendant, Gillette, 30% liable for the Jarvises' injuries. The district court, after reducing the damage award to Harold Jarvis by the amount due him under the Pennsylvania No-Fault Motor Vehicle Insurance Act, entered judgments totaling $57,750 in favor of the two plaintiffs. The propriety of these awards is not contested in this appeal.[2]
 
 
 6
 On April 1, 1980, the Jarvises filed a motion to amend the judgment to include prejudgment interest in accordance with Rule 238. The district court denied the motion on May 28, 1980. The sole question presented by this appeal is whether the district court correctly held that Rule 238 does not constitute a substantive right of recovery and therefore is inapplicable in a diversity action brought in a federal court in Pennsylvania.
 
 II.
 
 7
 It has been generally held that a state rule of law which is deemed "substantive" is to be applied in federal diversity proceedings, whereas a state rule which is characterized as "procedural" is not to be so applied. However, in Edelson v. Soricelli, 610 F.2d 131, 133 (3d Cir. 1979), this court stated: "Labeling a legal precept ab initio as 'procedural' or 'substantive,' without more, contributes nothing to reasoned discourse. It provides no effective guidance in solving difficult problems that arise in diversity cases such as the one before us."
 
 
 8
 Since this case does not present a direct conflict between state law and any Federal Rule of Civil Procedure, the starting point for our inquiry as to when a state rule is to be applied in a diversity action, must be the Rules of Decision Act, originally enacted as section 34 of the Judiciary Act of 1789:
 
 
 9
 The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.
 
 
 10
 28 U.S.C. § 1652 (1976).[3] It was this Act on which the Supreme Court focused in Erie, supra, the case in which the Court overturned the precept expressed in Swift v. Tyson, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), that "(t)he laws of the several states" includes only state statutory and "local" law. Rejecting the Swift principle, the Court in Erie held instead, that the Rules of Decision Act mandates the application of state common law as well.
 
 
 11
 Underlying the Erie decision were two considerations, one constitutional and one policy-oriented. On the one hand, the Court concluded that "Congress has no power to declare substantive rules of common law applicable in a State.... (N)o clause in the Constitution purports to confer such a power upon the federal courts." 304 U.S. at 78, 58 S.Ct. at 822. On the other hand, the Court was disturbed by the forum shopping to which the Swift rule gave rise, and by the patent unfairness of having the law to be applied in the resolution of a controversy depend upon whether, because of the accident of diversity of citizenship, the case was brought in a federal or state court.
 
 
 12
 After Erie, the Court was left with the task of defining exactly when a state law constituted a "rule of decision" and thus had to be applied by a federal court. In Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the Court, in holding that federal courts must apply state statutes of limitations in diversity cases, rejected a test based on the characterization of a law as "substantive" or "procedural." The appropriate inquiry, rather, was whether the application of the state, rather than the federal, rule would determine the outcome of the litigation:
 
 
 13
 It is therefore immaterial whether statutes of limitation are characterized either as "substantive" or "procedural" in State court opinions in any use of those terms unrelated to the specific issue before us. Erie R. Co. v. Tompkins was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result.
 
 
 14
 Id. at 109, 65 S.Ct. at 1469. Underlying the "outcome-determinative" test of Guaranty Trust was the view that the "unfairness" and "forum shopping" that the Court in Erie desired to prevent were likely to occur, and indeed were inevitable, where the difference between the application of state or federal law would be dispositive of the outcome of the suit.
 
 
 15
 In subsequent opinions, the Court refined the "outcome-determinative" test of Guaranty Trust. In Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the Court announced that that test must give way where there is a strong countervailing federal interest in the application of the federal rule-there, the provision of jury trials of disputed questions of fact. More fundamentally, in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Court observed that " '(o) utcome-determination' analysis was never intended to serve as a talisman" and that "choices between state and federal law are to be made not by application of any automatic, 'litmus paper' criterion, but rather by reference to the policies underlying the Erie rule ...: discouragement of forum-shopping and avoidance of inequitable administration of the laws." Id. at 466-68, 85 S.Ct. at 1141-1142 (footnote omitted). See also Walker v. Armco Steel Corp., 446 U.S. 740, 747, 100 S.Ct. 1978, 1983, 64 L.Ed.2d 659 (1980).
 
 
 16
 Thus, in determining whether a federal court in a diversity case should apply state law under the Rules of Decision Act, the mere labeling of the state law as "substantive" or "procedural" does not advance the analysis. Rather, we must approach a problem such as is presented by the instant case by considering how the constitutional and policy concerns that motivated the Court in Erie and its progeny are implicated by the application or nonapplication of the particular state rule at issue. See Stoner v. Presbyterian Univ. Hosp., 609 F.2d 109, 111 (3d Cir. 1979) (per curiam). As indicated by the preceding discussion, these concerns include (1) the effect of application of the state or federal rule on the outcome of the litigation; (2) the likelihood that divergent state and federal rules will result in forum shopping; and (3) the existence of any overriding federal interest in the application of the federal rule.[4]
 
 III.
 Rule 238 provides, in relevant part:
 
 17
 (a) Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof, the court ... shall
 
 
 18
 (1) add to the amount of compensatory damages ... in the verdict of a jury, or in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the ... verdict or decision;
 
 
 19
 (2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the ... verdict or decision.
 
 
 20
 (e) If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by ... verdict or decision, exclusive of damages for delay, more than 125 percent of the offer, the court ... shall not award damages for delay for the period after the date the offer was made.
 
 
 21
 Rule 238 does not provide for prejudgment interest in all cases.[5] As the Pennsylvania Supreme Court, which promulgated Rule 238, explained in Laudenberger, supra :
 
 
 22
 Rule 238 awards damages for delay only in cases where the defendant made no settlement offer prior to trial or where the defendant made an offer of settlement which was 25% less than the amount of the jury verdict. Such language clearly reflects a primary desire to encourage pre-trial settlement. In those instances where the settlement offer is not accepted and the jury verdict does not exceed the offer by 25%, the interest is only computed up to the date of the settlement offer. By tolling the running of interest, this provision demonstrates the prominent goal of fostering early settlements. Undeniably, this rule serves to compensate the plaintiff for the inability to utilize funds rightfully due him, but the basic aim of the rule is to alleviate delay in the disposition of cases, thereby lessening congestion in the courts.
 
 
 23
 436 A.2d at 151.
 
 
 24
 The fact that Rule 238 was promulgated primarily for the "procedural" purposes of encouraging settlement and lessening docket congestion does not, however, mean that it is inapplicable in a federal court. The question of its applicability implicates the very policies that underlay Erie and its progeny. While Rule 238 may have been designed to expedite the processing of litigation in Pennsylvania, its application nevertheless results in increasing the amount of damages a plaintiff can receive and a defendant must pay, over the amount of damages that would be awarded in the absence of the Rule. As a consequence, even though adopted by Pennsylvania for control of litigation in the Pennsylvania state courts, the existence of Rule 238 has a clear and undeniable effect on the monetary outcome of a suit. Its applicability in a given forum is therefore an influence on decisions of plaintiffs and defendants as to the desirability of bringing or defending litigation in that particular forum. To this extent at least, it is clear that the decision of a federal court to apply or not to apply Rule 238 is "outcome determinative."
 
 
 25
 If Rule 238 is applied in the federal courts as it is in the Pennsylvania courts, a federal plaintiff will have the opportunity to obtain additional damages in the form of prejudgment interest-damages the plaintiff would not otherwise receive under present federal statutes and rules.[6] With the long delays that frequently attend the course of lawsuits from the filing of a complaint to verdict, and with interest rates at their present high level,[7] the difference between the application and the nonapplication of Rule 238 in terms of a plaintiff's ultimate recovery can be quite substantial. Indeed, with jury verdicts in many classes of cases running into six and seven figures, prejudgment interest can represent a not inconsiderable portion of a plaintiff's damages.
 
 
 26
 Perhaps most important, however, is the fact that if Rule 238 is not applied in the federal courts, an incentive for forum shopping in diversity actions may well result. We can readily foresee that many plaintiffs would sue in Pennsylvania state court to take advantage of the Rule and thus to recover considerable additional damages, whereas non-Pennsylvania defendants who are sued in Pennsylvania state court might understandably seek to remove the action to federal court in order to avoid additional damages. It is conceivable that two plaintiffs, injured in identical accidents in Pennsylvania, would recover different amounts of damages solely because the citizenship of the defendants allowed one, but not the other, to remove the case to federal court and by doing so, escape liability for prejudgment interest. This is precisely the type of situation Erie sought to prevent.
 
 
 27
 Thus, the "fairness" and "forum shopping" factors which we are mandated to consider in resolving the present issue, both argue for the application of Rule 238 in the federal courts which sit in Pennsylvania. We must now inquire, however, whether there is any countervailing federal interest in denying prejudgment interest which would counsel against the application of Rule 238 in federal diversity cases in Pennsylvania. We can find none.
 
 
 28
 The most that can be argued is that because the federal courts in Pennsylvania may not have the same docket or calendar problems as do the Pennsylvania state courts, there is no need to adopt a prejudgment interest rule in the federal courts. But the absence of a need to apply such a state rule cannot be equated with the presence of a need to apply a federal rule. No harm to federal policies or interests has been demonstrated and we know of no such harm that would occur were federal courts in Pennsylvania to apply Rule 238. Indeed, our research discloses that in at least nine cases that have reached this court, prejudgment interest pursuant to state law was granted by the federal district courts of this circuit. See note 8 and accompanying text infra.
 
 
 29
 Under the circumstances presented here, we perceive no reason why the practice with respect to prejudgment interest in a federal court should differ from that in a state court merely because the court in which the action has been brought is a federal court.
 
 IV.
 
 30
 Our holding that federal courts in diversity cases should apply state law with respect to prejudgment interest is consistent with precedent in this and other circuits. In Huddell v. Levin, 537 F.2d 726, 742-43 (3d Cir. 1976), aff'g in relevant part 395 F.Supp. 64, 93-94 (D.N.J.1975), this court adopted the district court's conclusion that New Jersey's prejudgment interest rule should be applied in a federal district court sitting in New Jersey. The district court opinion in Huddell relied on Chief Justice Weintraub's analysis in Busik v. Levine, 63 N.J. 351, 307 A.2d 571, appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973), in which the New Jersey Supreme Court upheld its prejudgment interest provision as a valid procedural rule. The district court nevertheless recognized the rule's substantive impact on a plaintiff's damages and held that Erie and its progeny required that it be applied in a federal court. In numerous cases which raised a question of prejudgment interest, both before and since Huddell, we have assumed state law governed that issue, and have upheld the application of state law without discussion of the Erie question.[8]
 
 
 31
 The courts of appeals in other circuits likewise have held that state prejudgment interest rules are to be applied in diversity cases. See, e.g., Schneider v. Lockheed Aircraft Corp., 658 F.2d 835, 855 (D.C.Cir.1981); In re Air Crash Disaster Near Chicago, Ill., 644 F.2d 633, 637 (7th Cir. 1981); Clissold v. St. Louis-S. F. Ry., 600 F.2d 35, 39 n.3 (6th Cir. 1979); Plantation Key Developers, Inc. v. Colonial Mortgage Co. of Indiana, Inc., 589 F.2d 164, 170-72 (5th Cir. 1979); Roy v. Star Chopper Co., 584 F.2d 1124, 1135 (1st Cir. 1978), cert. denied, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979);[9] Rositer v. Bob Toomey Truck Leasing, Inc., 567 F.2d 938, 944-45 (10th Cir. 1977); Casto v. Arkansas-Louisiana Gas Co., 562 F.2d 622, 623-25 (10th Cir. 1977).[10]
 
 V.
 
 32
 In holding that Rule 238 is "procedural" and hence does not have to be applied in the federal courts, the district court relied on the fact that the Rule had been promulgated by the Pennsylvania Supreme Court, whose rulemaking authority, under the Pennsylvania Constitution, is limited to the issuance of "procedural" rules.[11] The district court reasoned that to hold that the Rule was "substantive" and hence applicable in the federal courts would second-guess the judgment of the Pennsylvania Supreme Court and call into question the validity of Rule 238 under the Pennsylvania Constitution. 491 F.Supp. at 390. Since the district court issued its decision, the Pennsylvania Supreme Court in Laudenberger, supra, has upheld the validity of Rule 238 on the ground that it is a procedural device, but one that has a collateral effect on substantive rights.
 
 
 33
 We do not believe that the Pennsylvania Supreme Court's conclusion that Rule 238 is procedural disposes of the question whether, under the Erie doctrine, that Rule must be applied in the federal courts. It must be recognized that the considerations the Pennsylvania Supreme Court took into account in assessing whether it acted within its constitutional power, were not the same as the various policy considerations a federal court must weigh in determining whether Erie mandates application of state law. As Professor Wright has written:
 
 
 34
 A particular issue may be classified as substantive or procedural in determining whether it is within the scope of a court's rulemaking power, or in resolving questions of conflict of laws, or in determining whether to apply state law or federal law. These are three very different kinds of problems. Factors that are of decisive importance in making the classification for one purpose may be irrelevant for another. To use the same name for all three purposes is an invitation to a barren and misleading conceptualism by which a decision holding that a particular issue is substantive for one of these purposes would be thought controlling authority when classification for a different purpose is involved.
 
 
 35
 C. Wright, Handbook of the Law of Federal Courts § 59 at 272 (3d ed. 1976) See Bullins, supra, 516 F.Supp. at 730. See also Busik, supra. Because the inquiries the Pennsylvania Supreme Court and this court must pursue are fundamentally different, we do not regard our holding here as inconsistent with Laudenberger or in any way as questioning the Pennsylvania Supreme Court's authority under the Pennsylvania Constitution to promulgate Rule 238. Indeed the Pennsylvania Supreme Court, in discussing Bullins in its Laudenberger opinion, acknowledged the very distinction we draw today:
 
 
 36
 (T)he district court conceded that its analysis of the nature of Rule 238 for diversity cases is a separate and distinct concern from the question of whether Rule 238 is procedural or substantive for the purposes of determining the Supreme Court's power to promulgate the rule. Judge Lord wrote that the Erie determination sought to fulfill the purposes of the Erie doctrine: to end discrimination against citizens by non-citizens and to discourage forum-shopping. In that context only did he hold the rule to be substantive. Clearly, such a classification, when drawn for its own particular purpose, cannot be considered final for all other intents.
 
 
 37
 436 A.2d at 153 (citation omitted).
 
 
 38
 This court confronted a similar situation in Huddell v. Levin, supra. There, we faced the question whether New Jersey's prejudgment interest rule, adopted by the New Jersey Supreme Court, had to be applied in the federal courts under Erie. In that case, as in the case here, the New Jersey Supreme Court sustained its power to issue the prejudgment interest rule as an exercise of its authority to promulgate procedural rules. Busik, supra. Notwithstanding the New Jersey Supreme Court's characterization, this court affirmed the district court's holding that the prejudgment interest rule had to be applied in the federal courts.
 
 VI.
 
 39
 The defendants in this case conceded in their answers to the Jarvises' motion for prejudgment interest that the settlement offer that had been made brought into play the operation of Rule 238, but contended that Rule 238 was not applicable in the federal courts. Having now resolved that issue by holding that Pennsylvania Rule of Civil Procedure 238 is to be applied in diversity actions in federal counts in Pennsylvania, we will reverse the judgment of the district court and remand the case to that court for the entry of a judgment which includes prejudgment interest in accordance with Rule 238.[12]
 
 
 
 *
 The preparation and filing of this opinion was postponed, with notice to counsel, until the opinion of the Pennsylvania Supreme Court in Laudenberger v. Port Authority, --- Pa. ---, 436 A.2d 147 (1981), was announced on October 29, 1981
 
 
 **
 Honorable H. Lee Sarokin, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 Federal statutory law currently makes no provision for prejudgment interest. See 28 U.S.C. § 1961 (1976). But see West v. Harris, 573 F.2d 873, 882-84 (5th Cir. 1978) (in actions under federal statutes, prejudgment interest may be necessary to fully compensate injured party; 28 U.S.C. § 1961 leaves open such relief), cert. denied, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). There is currently a proposal before Congress to allow such interest. See H.R. 4765, 97th Cong., 1st Sess. tit. V (1981)
 
 
 [2]
 None of the defendants appealed from the verdict in favor of the Jarvises. Although the Jarvises, in their brief, argued that it was error for the district court to deduct $15,000, representing no-fault wage loss benefits, from Harold Jarvis' award because of the refusal of insurance carriers to pay Harold Jarvis these benefits, the Jarvises withdrew this issue from our consideration during oral argument since the liability of the insurance carriers was being litigated in separate proceedings
 
 
 [3]
 Where there is a direct conflict between state law and a Federal Rule of Civil Procedure, the case is controlled by the Rules Enabling Act, 28 U.S.C. § 2072 (1976):
 The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts and courts of appeals of the United States in civil actions....
 Such rules shall not abridge, enlarge or modify any substantive right....
 All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect....
 See Walker v. Armco Steel Corp., 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980).
 
 
 [4]
 A review of Supreme Court cases involving the Rules of Decision Act, where there was no direct conflict between state law and any Federal Rule of Civil Procedure, indicates that state law has generally been applied absent any strong countervailing interest in applying the federal rule. See Walker, supra (federal court must apply state law on tolling of statute of limitations); Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) (same); Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (federal court must apply state law on enforceability of arbitration agreement); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (federal court must apply state statute requiring plaintiff to post bond in shareholder's derivative action); Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) (federal court must apply state law barring suits by corporations not qualified to do business in the state); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (federal court must apply state conflict-of-laws rules). Cf. Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) (countervailing federal interest in affording jury trial)
 However, where a direct conflict was presented between a Federal Rule and state law, the Rules Enabling Act rather than the Rules of Decision Act has been applied and the application of the Federal Rule upheld if the Rule arguably regulated procedure. See Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (Rule 4(d)(1), which permits service of summons and complaint by leaving them with an adult at defendant's dwelling, supersedes state requirement of personal service on executor).
 
 
 [5]
 Prejudgment interest has been provided in other states by statute, see, e.g., Colo.Rev.Stat. § 13-21-101 (1974); D.C.Code Ann. § 15-109 (1973); Kan.Stat.Ann. § 16-201 (Supp.1980); La.Rev.Stat.Ann. § 13:4203 (West 1968); Mich.Comp.Laws Ann. § 600.6013 (Supp.1980); N.H.Rev.Stat.Ann. § 524:1-b (1974); N.Y.Civ.Prac.Law § 5001 (McKinney 1963); N.C.Gen.Stat. § 24-7 (1965); N.D.Cent.Code §§ 32-03-04, -05 (1976 & Supp.1977); Okla.Stat.Ann. tit. 12, § 727(2) (West Supp.1980); R.I.Gen.Laws § 9-21-10 (Supp.1977); S.D.Codified Laws Ann. § 21-1-11 (1979); Tex.Rev.Civ.Stat.Ann. art. 5069-1.03 (Vernon Supp.1980), by rule, see, e.g., N.J.R. 4:42-11(b), and by judicial decision, see, e.g., Parker v. Brinson Constr. Co., 78 So.2d 873 (Fla.1955)
 
 
 [6]
 Justice Roberts of the Pennsylvania Supreme Court, dissenting in Laudenberger v. Port Authority, --- Pa. ---, 436 A.2d 147 (1981), spoke to the substantive content of a pre-verdict interest rule, albeit in a Pennsylvania constitutional context: "Rule 238 increases the relief available to a plaintiff by mandating the deprivation of a defendant's property.... (T)he plaintiff's rights have been enlarged, while the rights of the defendant have been abridged." Id. 436 A.2d at 158 (Roberts, J., dissenting). In his dissent, id., Justice Roberts stressed the damage character of prejudgment interest by referring to the observation of the Pennsylvania Supreme Court in Watson v. McManus, 223 Pa. 583, 588, 72 A. 1066, 1067 (1909), that interest "is as distinctly a substantive part of the debt as if the obligation to pay it was founded on a contract for interest."
 
 
 [7]
 Rule 238, which Laudenberger, supra, has now upheld, established as of April 15, 1979 a 10% interest rate to be applied. We observe that that rate is still below interest rates prevailing on the market
 
 
 [8]
 See Peterson v. Crown Fin. Corp., 661 F.2d 287, 292-93 (3d Cir. 1981); Martin Marietta Corp. v. New Jersey Nat'l Bank, 653 F.2d 779, 785 n.1 (3d Cir. 1981); Dawson v. Chrysler Corp., 630 F.2d 950, 961-62 (3d Cir. 1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); E. C. Ernst, Inc. v. Koppers Co., 626 F.2d 324, 332-33 (3d Cir. 1980); Draper v. Airco, Inc., 580 F.2d 91, 97-98 (3d Cir. 1978); Mid-Jersey Nat'l Bank v. Fidelity-Mortgage Investors, 518 F.2d 640, 645 (3d Cir. 1975); Glick v. White Motor Co., 458 F.2d 1287, 1293-94 (3d Cir. 1972) (applying Michigan conflicts-of-laws principles with no discussion of Erie ); Buono Sales, Inc. v. Chrysler Motors Corp., 449 F.2d 715, 723 (3d Cir. 1971). See also Southern Pac. Co. v. Miller Abattoir Co., 454 F.2d 357, 362 (3d Cir. 1972) ("Since the Railroad's claim arises under a federal statute, whether prejudgment interest will be allowed is initially a question of federal law and not the law of the forum state.")
 
 
 [9]
 In Roy, the court held that the district court properly applied Rhode Island's prejudgment interest statute, even though that statute-like the Rule at issue here-was enacted for the "procedural" purpose of promoting the expeditious settlement of tort claims. See Isserlis v. Director of Pub. Works, 111 R.I. 164, 166-67, 300 A.2d 273, 274 (1973)
 
 
 [10]
 That prejudgment interest is controlled by state law was clearly implied by the Supreme Court in Klaxon Co. v. Stentor Elec. Mfg. Co., supra, which held that a federal court in Delaware had to look to Delaware conflicts-of-laws principles in determining whether to apply New York's prejudgment interest statute in the case before it. It follows that if prejudgment interest had been deemed a matter of federal law, the Court would not have been concerned with the proper choice of state law on the subject
 
 
 [11]
 See Pa.Const. art. 5, § 10(c), which provides:
 The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts ... if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant....
 
 
 [12]
 Third-party defendant Gillette argues in her brief that even if Rule 238 applies here, it cannot be invoked against her since the plaintiffs did not sue her directly. The district court, because it had determined that prejudgment interest was not available, did not have to reach any prejudgment interest issue presented by Gillette. Because the record on that issue is not developed, and the application of Rule 238 in the third-party defendant context may well involve facts or factors not apparent here, that issue, if pressed, should be decided by the district court in the first instance on remand