**Claude R. FAUBER, Jr., Administrator of the Estate of Bryan D. Fauber, Deceased, Plaintiff,**

v.

**KEM TRANSPORTATION AND EQUIPMENT COMPANY, INC., James E. Pfautz, Hudson Trailer and Truck Rental Company, GEK Rentals, Hughes Printing Company, a division of Monroe Printing Company, Defendants.**

Civ. No. 85–1309.

United States District Court,
M.D. Pennsylvania.

Sept. 21, 1988.

Terrence R. Nealon, Thomas J. Foley, Jr. and Associates, P.C., Scranton, Pa., for plaintiff Claude R. Fauber, Jr.

Z.R. Bialkowski, Jr., Bialkowski & Savitsky, Scranton, Pa., for KEM Transp. and Equipment Co., Inc., James E. Pfautz, Hudson Trailer and Truck Rental Co., and GEK Rentals.

Joseph P. Lenahan, Lenahan & Dempsey, P.C., Scranton, Pa., for Hughes Printing Co.

Joseph H. Foster, White & Williams, Philadelphia, Pa., for Pennsylvania Power & Light Co.

Cody H. Brooks, Henkleman, Kreder, O'Connell & Brooks, Scranton, Pa., for Borough of East Stroudsburg.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

### Procedural Background

This case is a wrongful death and survival action arising from the death of Bryan D. Fauber in a motorcycle accident on September 13, 1983. Suit was filed in federal

court on September 11, 1985 and after several delays in the pleading and discovery stages, this matter was tried before a jury beginning on April 21, 1987. On May 4, 1987, a verdict for $449,027.35 was returned in favor of the Plaintiff. Of that amount, Defendant Hughes' obligation was calculated to be $134,708.20.

On May 7, 1987, Plaintiff motioned this court under Pa.R.C.P. 238 to impose delay damages since the jury award exceeded the Defendant's settlement offer by 125%.[1] Prior to trial, Plaintiff's settlement demands ranged from a high of $1,000,000.00 to a low of $400,000.00 of which Hughes Printing was to pay $200,000. On the other hand, Defendant Hughes Printing never made an offer that exceeded $50,000.00.

On August 14, 1987, this court entered an order denying the Plaintiff request for delay damages since it was found that the dilatory tactics and lack of good faith in settlement negotiations exhibited on *both* sides did not warrant Rule 238 sanctions. Specifically, we found that although Defendant Hughes requested the two continuances in this case, counsel for Plaintiff concurred in the first and helped trigger the second by failing to supply expert reports by the initial discovery deadline.[2] Moveover, since the Plaintiff's demands were unreasonable and the case was in trial before settlement proposals reached a point were serious negotiations could begin, we decided against Rule 238 damages.

Plaintiff has filed a motion to reconsider asserting that this court misinterpreted the Pennsylvania Supreme Court's application of Rule 238 and that state court precedent dictates that delay damages are appropriate in this case. Defendant counters by first asserting that Rule 238 damages no longer apply in federal court. Alternatively, the Defendant insists that if Rule 238 damages are available, the court properly applied the law to the facts when it found that since the Plaintiff's demands were unreasonable until after the trial started, damages should not apply. This court heard oral arguments on July 11, 1988, concerning Plaintiff's motion for reconsideration to resolve any factual disputes which may have been presented and weigh any final comments by the parties. After reviewing the supplemental briefs submitted by both parties, we are now prepared to rule on this matter.

Discussion

I.

■ The first issue that must be addressed by this court is whether Pennsylvania's Rule of Civil Procedure 238 applies in federal diversity actions in light of *Craig v. Magee Memorial Rehabilitation Center,* 512 Pa. 60, 515 A.2d 1350 (1986), and its progeny.

Since the Plaintiff first requested this court to impose delay damages, several federal courts have found Rule 238 to be merely procedural and not applicable in federal court under the *Erie* Doctrine.[3] This strain of reasoning developed after the Supreme Court of Pennsylvania suspended the mandatory provisions of Rule 238 in October of 1986. *See Craig,* 515 A.2d at 1353. Previously, Rule 238 provided for the automatic addition of delay damages to jury awards which exceeded written settlement offers by 125%. That rule had been held applicable to diversity actions in federal courts. *Jarvis v. Johnson,* 668 F.2d 740 (3d Cir.1982).

However, in the *Craig* case, the Pennsylvania Supreme Court suspended the mandatory provision of Rule 238 because it was

1. As explained *infra,* Pa.R.C.P. 238 provides for the addition of delay damages to a jury verdict which is over 125% of a defendant's last written offer.

2. Throughout this suit, the parties had a "considerable dispute regarding discovery." *See* Doc. Nos. 79, 84, and 93. This court, acknowledging the difficulties engendered by both parties to this case, granted the Defendant's motions to continue. *See* Doc. Nos. 79 and 91.

3. In *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1934), the United States Supreme Court held that federal courts are to apply state substantive law and federal procedural law in diversity cases. *See also, Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

found that the assessment of damages without regard to fault "runs too tight a gauntlet through Due Process." The court found that, in practice, Rule 238 had become "an uncontestable presumption that all fault lies with a defendant." *Craig* 515 A.2d at 1353. The mandatory provision of Rule 238 was suspended precisely because the rule had, in application, overstepped the limits of a procedural rule.

Shortly after the *Craig* decision, Chief Judge John Fullam stated in *Locke v. Frank*, Civ. No. 86–2087, slip op. at 4 (E.D.Pa. Jan. 16, 1988) [available on WESTLAW, 1987 WL 5717]:

> [g]iven the Craig decision, it is indeed difficult to view whatever remains of Pennsylvania's delay damage doctrine as a matter of substantive law for Erie purposes. Rather, it appears to be a procedural matter of imposing sanctions for litigation misconduct. Moreover, since the rule has been suspended, and has been replaced merely by directives of the Pennsylvania Supreme Court in exercising its supervisory power over the lower state courts, the new procedure plainly has no direct application in the federal courts; at most, the new arrangement may be looked to as comity.

This reasoning has been applied by several other judges in that district. *See Holley v. Cincinnati–Forte Co.*, Civ. No. 87–1779, slip op. (E.D.Pa. May 25, 1988) [available on WESTLAW, 1988 WL 55234] (available September 16, 1988, on LEXIS, Genfed library, Dist file); *Salvatico v. Supermarkets General Corporation*, Civ. No. 86–4072, slip op. (E.D.Pa. April 29, 1988) [available on WESTLAW, 1988 WL 41441] (available September 16, 1988, on LEXIS, Genfed library, Dist file); *Redmann v. Jefferis*, Civ. No. 87–4056, slip op. (E.D.Pa. April 1, 1988) [available on WESTLAW, 1988 WL 33927] (available September 16, 1988, on LEXIS, Genfed library, Dist file); *DeMarchis v. Louisville Ladder*, Civ. No. 85–1494, slip op. (E.D.Pa. Feb. 4, 1988) [available on WESTLAW, 1988 WL 9518] (available September 16, 1988, on LEXIS, Genfed library, Dist file); *Nabisco Brands, Inc. v. Hill Creek Farms*, Civ. No. 85–6726, slip op. (E.D.Pa. Oct. 22, 1987) [available on WESTLAW, 1987 WL 18859] (available September 16, 1988, on LEXIS, Genfed library, Dist file); *Schmehl v. Sheraton Corp.*, Civ. No. 85–3242, slip op. (E.D.Pa. March 3, 1987) [available on WESTLAW, 1987 WL 7389] (available September 16, 1988, on LEXIS, Genfed library, Dist file).

Although this court acknowledges the above cited decisions, on the appellate level, there have been three cases which indirectly address the application of Rule 238 damages to federal diversity actions. Two of them, *Monessen Southwestern Railway Company v. Morgan*, —— U.S. ——, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988) and *Poleto v. Consolidated Rail Corp., et al*, 826 F.2d 1270 (3d Cir.1987), interpret the application of Rule 238 to suits filed under the Federal Employers' Liability Act (FELA). The other case, *Salas v. Wang, et al*, 846 F.2d 897 (3d Cir.1988), discusses an analogous New Jersey delay damages statute.[4]

In *Monessen* and *Poleto*, the U.S. Supreme Court and the Third Circuit Court of Appeals found that when a state court hears a FELA case, "state substantive law, particularly Pennsylvania Rule of Civil Procedure 238," is not applicable. *Poleto* at 1274. In *Monessen*, the high court examined the same issue presented in *Poleto*, whether prejudgment interest, as outlined in Rule 238, applies in FELA cases. The court found that "[p]rejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered ... Moreover, prejudgment interest may constitute a significant portion of an FELA plaintiff's total recovery." *Monessen* —— U.S. at ——, 108 S.Ct. at 1842. Writing the opinion of the court, Justice White stated:

> The Pennsylvania courts cannot avoid the application of federal law to determine the availability of prejudgment interest under FELA by characterizing

---

4. For a comparison of New Jersey and Pennsylvania delay damages, see Note, *Automatic Assessment Of Delay Damages Suspended—Craig v.* *MaGee Memorial Rehabilitation Center*, 60 Temp. L.Q. 389 (1987).

Rule 238 as nothing more than a procedural device to relieve court congestion ... [P]rejudgment interest constitutes too substantial a part of a defendant's potential liability under FELA for this Court to accept a State's classification of a provision such as Rule 238 as a mere "local rule of procedure.[4]" (Footnote 4: The Court of Appeals for the Third Circuit recognized in an FELA action that Rule 238 is substantive in nature. *Poleto v. Consolidated Rail Corp.*, supra, at 1274. Indeed, even the Pennsylvania Supreme Court has acknowledged that Rule 238 has "both procedural and substantive elements." *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 66, 436 A.2d 147, 154 (1981)).

In *Salas*, the Third Circuit examined the application of a compatible New Jersey prejudgment interest statute in a medical malpractice case founded on federal diversity jurisdiction. Specifically, the court stated in footnote 13 of *Salas* that:

The district court correctly determined that, under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938), it should apply the New Jersey prejudgment interest rule in this diversity action. *See Huddell v. Levin*, 395 F.Supp. 64, 94 (D.N.J.1975) ("under the *Erie* doctrine, a federal court must apply prejudgment interest to any award in a diversity case where the New Jersey substantive law as to damages is applicable."), *vacated on other grounds*, 537 F.2d 726 (3d Cir.1976); *see also Jarvis v. Johnson*, 668 F.2d 740, 741 (3d Cir.1982) (Pennsylvania prejudgment interest rule applicable in federal diversity action).

In light of the above case law, developed by the appellate courts, we find that Rule 238 is applicable in federal court. As Justice White stated, the Pennsylvania courts can not avoid the application of Rule 238 be merely finding it to be procedural in nature.

The analysis furnished by the Third Circuit in *Jarvis v. Johnson*, 668 F.2d 740 (3d Cir.1982), provides the guidance needed to determine the applicability of Rule 238. The factors to be considered—(1) the effect of application of the state or federal rule on the outcome of the litigation; (2) the likelihood that divergent state and federal rules will result in forum shopping; and (3) the existence of any overriding federal interest in the application of the federal rule —when applied to the *Craig* Rule 238 standard, results in a finding that delay damages are "outcome determinative" and should be applied by this court. *See Jarvis*, supra, at 745.

In holding that the Pre–*Craig* Rule 238 was applicable in federal diversity actions, Judge Leonard Garth explained in *Jarvis:*

While Rule 238 may have been designed to expedite the processing of litigation in Pennsylvania, its application nevertheless results in increasing the amount of damages a plaintiff can receive and a defendant must pay, over the amount of damages that would be awarded in the absence of the Rule. As a consequence, even though adopted by Pennsylvania for control of litigation in the Pennsylvania state courts, the existence of Rule 238 has a clear and undeniable effect on the monetary outcome of a suit. Its applicability in a given forum is therefore an influence on decisions of plaintiffs and defendants as to the desirability of bringing or defending litigation in that particular forum.

*Jarvis*, 668 F.2d at 745.

Besides holding that the nonapplication of Rule 238 in federal court would promote forum shopping, the appellate court determined that delay damages have a substantial impact in terms of plaintiff's ultimate recovery and thus influenced the overall outcome of the litigation. *Id.* at 745; *see also, Monessen*, supra. —— U.S. at ——, 108 S.Ct. at 1842. Moreover, the court failed to find any countervailing federal interest in denying delay damages. Consequently, it was concluded that Rule 238 did apply in federal diversity suits. *Id.* at 746.

This court anticipates no substantive modification of the *Jarvis* analysis in light of the *Craig* decision and will apply Rule 238 damages in reliance on the reasoning set forth in *Jarvis, Monessen, Poleto* and their progeny. *See also Rossman v. K–*

**1238**

*Mart Corp.,* — F.Supp. — (M.D.Pa. June 6, 1988) (Rambo J.).

## II.

Since this court has determined that Rule 238 applies in federal court, the final issue to be discussed is whether the circumstances presented here warrant the imposition of delay damages. As originally outlined in our August 14, 1987 Memorandum and Order, this action was commenced by Plaintiff Claude R. Fauber, Jr., Administrator of the Estate of Bryan D. Fauber, on September 11, 1985. On September 16, 1985, Hughes Printing was served with a copy of the complaint as well as interrogatories and a copy of Plaintiff's request for production of documents.

On September 25, 1985, Hughes Printing filed a motion for extension of time within which to answer.

By Practice Order dated October 22, 1985, this case was initially placed on a November, 1986 Trial List.

On October 24, 1985, Hughes Printing filed an Answer to Plaintiff's complaint.[5] On January 14, 1986, Hughes Printing forwarded answers to Plaintiff's interrogatories and requests for production of documents to Plaintiff.

On October 28, 1986, Hughes Printing filed a motion for a continuance to the January 5, 1987 Trial List. The stated purpose of Defendant's request was that it had not received Plaintiff's expert reports or critical information related to the Defendant's eyeglass prescription and that a personal conflict in scheduling existed. Counsel for Plaintiff concurred in the motion for continuance. *See* Exhibit A attached to Answer of Hughes Printing, Doc. No. 170. On December 5, 1986, this Court entered an Order continuing this action to the March 9, 1987 Trial List and extending the discovery deadline to January 20, 1987.

On March 3, 1987, Hughes Printing filed a motion for continuance of this case from the March 9, 1987 Trial List to the April, 1987 Trial List. In its motion Hughes averred that the continuance was necessitated by Plaintiff's failure to timely supply expert reports. At that time, Plaintiff's expert reports were not available for inspection by the Defendants, although trial was scheduled to begin in one week. On March 6, 1987, this Court entered an Order continuing this case to the April 6, 1987 Trial List and ordered all expert reports to be exchanged no later than March 16, 1987. Doc. No. 93.

On or before March 16, 1987 Plaintiff provided defense counsel with copies of five expert reports. Defendant Hughes Printing did not provide Plaintiff with copies of any expert reports by March 16, 1987. Consequently, on March 24, 1987, Plaintiff's filed a motion for sanctions with reference to any expert reports. In turn, Defendant Hughes filed a motion for sanctions concerning lost evidence which had previously been in the possession of the Plaintiff.

On March 27, 1987, Plaintiff filed a motion to compel supplemental answers to expert interrogatories. Plaintiff's expert interrogatories were answered prior to trial.

On April 13, 1987, after jury selection began, this Court scheduled a hearing for Thursday, April 16, 1987 for argument and resolution of all outstanding motions. On April 14, 1987, Hughes Printing filed a motion for summary judgment. On April 16, 1987, the Court heard arguments in Chambers on all outstanding motions and made rulings on the same. As to Plaintiff's request for sanctions, the motion was voluntarily withdrawn since Hughes Printing provided counsel for Plaintiff with expert reports. The Defendant's motion for sanctions was resolved by the parties at

5. According to the Local Rules of Court for the Middle District of Pennsylvania, each party to a civil action should complete discovery within six (6) months of the date of the last pleading filed by such party. Local Rule 406; F.R.C.P. 7(a). Plaintiff filed the Complaint on September 11, 1985. Defendant Hughes Printing filed

an Answer to the Complaint on October 24, 1985, and an Answer to a Crossclaim on December 23, 1985. If all events went as scheduled, Plaintiff should have completed discovery by the middle of March 1986 and Defendant Hughes Printing by the end of June 1986—six months after the filing of their last pleading.

the pretrial conference. Doc. No. 129. Following the hearing in Chambers, Hughes Printing filed a motion to dismiss on April 16, 1987, challenging jurisdiction.

At no time prior to the commencement of trial did Hughes Printing make a written offer of settlement in a specified sum. However, prior to opening statements by counsel on April 20, 1987 counsel for Hughes Printing offered $50,000.00 for settlement of this case against said Defendants. Prior to trial Plaintiff's lowest demand to Defendant's counsel was for $400,000.00. Of this amount, Hughes Printing was to pay $200,000.00. Prior to jury selection, Plaintiff's overall demand in this case was $1,000,000.00 dollars.

The actual trial did not begin until April 27, 1987, and a verdict was returned for the Plaintiff in the amount of $449,027.36 on May 4, 1987. Defendant Hughes Printing's portion of the molded verdict amounted to $134,708.20. The instant Rule 238 motion followed on a May 7, 1987, wherein Plaintiff seek 10% interest per annum from Hughes Printing on its 30% proportionate share of the verdict.

With the above factual history in mind, this Court shall attempt to apply Pennsylvania's delay damage statute to this matter. Pennsylvania Rule of Civil Procedure 238 provides for the addition of delay damages to a jury verdict to be calculated at 10% per annum from the date that the complaint was filed, or one year after the cause of action accrued, whichever is later. However, a Defendant may toll running of delay damages if before trial, he makes a: (1) written offer of settlement; (2) in a specified sum; (3) providing for prompt cash payment; (4) the offer continues in effect until the start of trial but is not accepted; and (5) Plaintiff does not recover more than 125% of the offer. Pa.R.C.P. 238(e).

In 1981, the Supreme Court of Pennsylvania explained the reasoning behind Rule 238 as follows:

The judicial system has long been vexed by the problem of congestion and delay in the disposition of civil actions for bodi-ly injury, death or property damages, pending in the trial courts ...

Statistics show that ... 38 percent (of major civil cases) are settled without going to trial. Some are settled through pretrial consultation techniques, but in too many cases meaningful negotiations commence only after a trial date is fixed or on the courthouse steps or in the courtroom, thus leading to delay in the disposition of cases and congestion in the courts. The present practice provides no incentive for early settlement.

In the usual civil action for bodily injury, death or property damage, there is no compensation to the successful plaintiff and no sanction against the defendant for the long delay between commencement of the action and the trial.

*St. Peter's Episcopal Church v. Barkus,* No. 3664–C of 1983, May 27, 1987, Court of Common Pleas for Luzerne County (Cappellini, J.), citing *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147, 150–151 (1981).

When first undertaken by the courts, Rule 238 was applied without consideration of fault. Once the verdict exceeded the Defendant's last written offer by 125%, the mandatory provisions of Rule 238 were imposed and damages assessed. After several constitutional challenges to these mandatory provisions arose, the Pennsylvania Supreme Court found in *Craig* that the assessment of damages without regard to fault "runs too tight a gauntlet through Due Process." *Craig,* 515 A.2d at 1353. The Court found that, in practice, Rule 238 had become "an uncontestable presumption that all fault lies with a defendant." *Id.* It was therefore decided to suspended the mandatory provisions of the rule since they overstepped the limits of a procedural rule.

In place of the mandatory provisions of Rule 238, the Pennsylvania Supreme Court established a procedure to be followed by the trial court in determining whether the facts of a particular case warrant the imposition of delay damages. No longer is it an automatic assessment of costs to a defendant, but rather, the burden is on a plaintiff to show "untoward delay." *Weaver v. Ab-*

*dul–Ela,* 43 Pa. D. & C.3d 346, 348 (1987). However, once established, the defendant can do little to avoid the assessment of damages.

In keeping with the rationale outlined in *Laudenberger,* the Pennsylvania Supreme Court in *Craig,* set forth the factors which a court must consider in ruling on a Plaintiff's entitlement to delay damages. The *Craig* Court noted:

> In making a decision on a Plaintiff's entitlement to delay damages, the mere length of time between the starting date and the verdict is not to be the sole criterion. The factfinder shall consider: the party's respective responsibilities in requesting continuances, the party's compliance with rules of discovery; the respective responsibilities for delay necessitated by the joinder of additional parties; and other pertinent factors.

*Edwards v. Swartz,* Civil No. 5147–C, Court of Common Pleas for Luzerne County, August 18, 1987 (Podcasy, J.), citing *Craig v. Mcgee Memorial Rehabilitation Center,* supra, at 1353.

█ If nothing else, the *Craig* decision has forced a marked change in the overall application of Rule 238. Rather than being "merely procedural," the effects of a plaintiff's attempts to establish inordinate delay and the imposition of damages is substantive in nature. Instead of all fault being attributed to the defendant, a more authentic representation of the actual cause for delay is furnished. In its final analysis, Rule 238 is a balancing of responsibilities in which the factfinder considers the respective fault of the parties and "charges" either the plaintiff or defendant with the various delays. *Hall v. Brown,* 363 Pa.Super. 415, 421, 526 A.2d 413 (1987).

Accordingly, the delay occasioned by both parties should be taken into consideration when assessing damages. As case law has developed, however, several factors have been included in the analysis while others have been specifically excluded. For example, Pennsylvania state courts have determined that delay caused by the "trial process" is to be considered for purposes of assessing Rule 238 damages. *St*

*Peter's Episcopal Church v. Barkus,* supra; *King v. SEPTA,* No. 2138 December Term 1982, J. Forer (Phila. County May 15, 1987); *Johnson v. Otis Elevator Co.,* No. 5453 August Term 1982 J. Katz (Phila. County August 10, 1987); *Fetter Estate v. Enck,* 80 Berks Co. L.J. 225 (1988).

However, the Pennsylvania Supreme Court did not list the amount of the Plaintiff's demand as an element of consideration. Furthermore, the Advisory Committee's proposed new Rule 238 also fails to require consideration of the reasonableness of the Plaintiff's demand. Supreme Court of Pennsylvania Civil Procedural Rules Committee, Proposed Recommendation No. 86; Hulton, *A Closer Look at Delay Damages,* Pa.Def.Inst., May 1988.

Consequently, even though the delay occasioned by both parties is considered, an appraisal of Plaintiff's demand is an excluded factor. In striking this element, this Court is cognizant of the fact that effective negotiations predominately begin with a demand from the Plaintiff. It follows that it is the Plaintiff who is in the best position to know of the inconvenience, pain, and suffering that has been caused him. The Plaintiff is in the best position to know, on a day-to-day basis, the necessity for medical expenses, rehabilitation the therapy, and the amount of wages lost. It is the Plaintiff who is, therefore, in the best position to demand an amount which will make him whole.

The Defendant, on the other hand, may be able to obtain objective data only after discovery. In this case, the Defendant had a great deal of information in his possession to assess the value of Plaintiff's suit and make a reasonable offer of settlement. He did not, however, have all information available to him since Plaintiff only delivered his expert reports immediately prior to trial. *See also Edwards v. Swartz,* supra. Nor was this an obvious case in which to evaluate the merits of Plaintiff's demands. The tortious use of property proposed by the Plaintiff was innovative but not unknown.

In applying Rule 238 to this case, this Court realizes that the intent of Rule 238 is

to expedite actions for bodily injury, death or property damage, by neutralizing any advantage to a Defendant in needlessly delaying the eventual recovery by Plaintiff. *Weaver v. Abdul–Ela*, 43 Pa D. & C.3d 346, 348 (1987). However, when the Plaintiff acts to his disadvantage by also needlessly delaying the outcome of a suit by failing to provide information to the Defendant, such omissions and uncooperative actions should not go unnoticed by the Court.

■ As we previously stated, significant delay was caused by both parties in failing to abide by the rules and order of this court. Following the lead of Judges Podcasy and Cappellini in *Edwards*, supra, and *Barkus*, supra, we shall award delay damages to the Plaintiff, but deduct from that period the time in which Plaintiff failed to abide by the rules and order of this court. Delay damages shall be awarded for the period between the filing of the Complaint on September 11, 1985 until January 20, 1987, the date on which the court designated as the conclusion for discovery. However, since the Plaintiff failed to provide the Defendant with key expert reports, which partially necessitated our March 6, 1987 Order, we shall exclude the collection of delay damages for the period between January 21, 1987 and March 16, 1987. Although the Defendant had enough information prior to that time to make a reasonable offer similar to the other Defendants, Plaintiff's actions lessened the likelihood of receiving such an offer and served only to increase the animosity between the parties. From the time of March 17, 1987, when Defendant had all information available to him, until May 4, 1987, the day the jury returned its verdict against the Defendant, delay damages shall be assessed against Hughes Printing.

Overall, this case was pending before the Court for five hundred ninety nine days. Delay damages shall be awarded excluding the fifty five days in which the Plaintiff failed to provide expert reports.

Calculating the damages as aforesaid, we find the Plaintiff is entitled to damages in the amount of $20,073.60.[6]

An appropriate Order follows.

### ORDER

NOW, THIS 21st DAY OF September, 1988, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for reconsideration is granted.

2. This Court's Order of August 14, 1987 is vacated.

3. Delay damages shall be awarded to the Plaintiff in the amount of $20,073.60.

---

6. The amount arrived at for delay damages was calculated as follows:

| | | |
|---|---|---|
| Sept. 11, 1985–Jan. 20, 1987 | = | 496 days |
| March 17, 1987–May 4, 1987 | = | 48 days |
| Total days for delay | | 544 days |

| | | |
|---|---|---|
| $134,709.20 × 10% per annum | = | $13,470.92 |
| $13,470.92 ÷ 365 days per year | = | $36.90 per day |
| 544 × $36.90 per day | = | $20,073.60 |