*396 OPINION OF THE COURT
Bruce McM. Wright, J.
In this wrongful death action, defendants move in limine for an order precluding any testimony at trial by plaintiffs economist, regarding inflation or discount rates. Defendants point out that CPLR article 50-B, which is applicable to this action, provides for a 4% increase in each annual payment that is made pursuant to a structured judgment. Defendants contend that the 4% increase in each payment represents the Legislature’s "built in” inflation factor, and that any preverdict testimony regarding inflation would be improper.
Plaintiff vigorously opposes defendants’ position with respect to the application of article 50-B. Plaintiff argues that article 50-B deals with posi-verdict judicial adjustments of the verdict reached by the jury, and in no way impacts upon the economist’s testimony pre-verdict. Plaintiff also contends that precluding the economist from testifying about the impact of inflation on earnings would deprive the jury from considering the realistic extent of plaintiffs damages with respect to the loss of her husband’s wages.
For the following reasons, defendants’ motion is denied and plaintiffs economist will be permitted to testify regarding inflation and its impact upon future damages to be awarded.
CPLR article 50-B (CPLR 5041-5049) is entitled "Periodic Payment of Judgments in Personal Injury, Injury to Property and Wrongful Death Actions”. Section 5041 sets forth the "Basis for determining judgment to be entered”, in personal injury, property damage and wrongful death actions. The court is directed to "enter judgment in lump sum for past damages, [and] for future damages not in excess of two hundred fifty thousand dollars” (CPLR 5041 [b]). With respect to awards of future damages in excess of $250,000, the court is directed to "enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages in periodic installments.” (CPLR 5041 [e].) Further, "[t]he present value of such contract shall be determined in accordance with generally accepted actuarial practices by applying the discount rate in effect at the time of the award to the full amount of the remaining damages, as calculated pursuant to [CPLR 5041 (e)]” (CPLR 5041 [e]).
CPLR 5041 (e) also states that the defendants and their insurance carriers must purchase an annuity contract which *397 shall provide for the payment of annual payments of the future damages; that "[t]he annual payment for the first year shall be calculated by dividing the remaining amount of future damages by the number of years over which such payments shall be made and the payment due in each succeeding year shall be computed by adding four percent to the previous year’s payment.” (Emphasis supplied.) It is this addition of 4% to each previous annual payment which defendants argue was the Legislature’s "built in” inflation factor, and which precludes the jury from any consideration of inflation’s impact upon the damages awarded to plaintiff.
However, as is correctly pointed out by plaintiff, CPLR 4111 (f), and not CPLR 5041, deals with a jury’s award of damages. CPLR 4111 (f) provides that the jury must itemize each element of damages that is awarded. "Each element shall be further itemized into amounts intended to compensate for damages that have been incurred prior to the verdict and amounts intended to compensate for damages to be incurred in the future. In itemizing amounts intended to compensate for future damages, the jury shall set forth the period of years over which such amounts are intended to provide compensation. In computing said damages, the jury shall be instructed to award the full amount of future damages, as calculated, without reduction to present value” (CPLR 4111 [f]; emphasis supplied). In other words, "[t]he jury is not to discount the future-damages award, i.e., take into consideration the value of paying a sum now for damages that won’t be suffered till later. Article 50-A [and Article 50-B are] supposed to take care of that problem with a different set of computations.” (Siegel, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 4111, 1991 Supp Pamph, at 158.)
In this case, plaintiff’s expert proposes to testify that decedent would have received future increases in wages over his remaining work life expectancy, and that there are several factors, including inflation, which would affect those increases. A jury’s calculation of damages for loss of future earnings, based only upon the amount that decedent was earning at the time of death, defies logic and common sense. Experience tells us that if plaintiff’s decedent had continued to work for another 20 or 30 years, his wages would have increased, and that some, if not most, of this increase would have been the result of inflation.
In fact, it has been suggested in one treatise that if a jury does not consider inflationary growth testimony, "the jury is *398 implicitly reducing the future damages to present value, which is not allowed under CPLR 4111.” (2 NY Negligence Rptr, No. 3, at 36.) That treatise also states that the question of whether evidence of inflationary growth rates of future damages should be introduced to the jury is not answered by the statutes. The authors point out the pros and cons of allowing such testimony. (2 NY Negligence Rptr, No. 3, at 36-37.)
In their reply memorandum, defendants stress the importance of the meaning of the term "present value.” Defendants state that "[t]he process of reducing an estimated stream of future damages to present value involves consideration of both inflation and interest rates.” However, accepting this definition does not mean that the jury should be precluded from considering the impact that inflation will have upon future wages. Defendants pose the question: "Why let inflation in and then deduct/discount it?” We let inflation in so that the jury has a realistic, meaningful basis upon which to calculate damages. A computation by the court of the present value of those damages is for the purpose of determining how the defendants are to pay the judgment. We deduct/discount inflation, reduce a portion of the verdict to present value, and devise a structured judgment of periodic payments, so that the actual payment of the judgment will be less expensive for liability insurance carriers, thus ostensibly rendering liability insurance more affordable (see generally, 1985 McKinney’s Session Laws of NY, mem of State Executive Dept, at 3019; 1986 McKinney’s Session Laws of NY, Governor’s approval mem, at 3182).
This court is not persuaded by defendant’s argument that the provision in CPLR 5041 (e) for a 4% increase in each annual payment under the structured judgment precludes the jury from any consideration of the impact of inflation upon future damages. CPLR 4111 (f) has not been repealed or amended by the Legislature in the wake of the enactment of article 50-B. These two sections of the CPLR must be considered together and harmonized with each other (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98).
The New York Pattern Jury Instructions address the interplay between CPLR 4111 and article 50-B. It is noted that "[i]n order for the court to enter an appropriate judgment under articles 50-A and 50-B, the court must require the jury to provide certain information in the special verdict, see CPLR 4111 (d), (e), (f).” (1 NY PJI2d, 1990 Supp, at 447.) Importantly, *399 PJI instructs us as follows: "The provisions governing the structuring of judgments relate only to the method and timing of payments for damages; the substantive law governing the assessment of the amount of damages is not affected.” (1 NY PJI2d, 1990 Supp, at 447.)
This crucial distinction was addressed in an article in the 1990 Trial Lawyers Quarterly. The article, by Fred Queller, Esq., makes the following points: "The posi-trial 'judgments’ provision of the CPLR can not possibly affect the pre-judgment trial aspects. The major change contemplated by the statute is to deprive the plaintiff of the right to receive 'up front’ the lump sum jury award (after adjustment by the jury for inflation and reduction to present value). Under 'classic’ verdicts and judgments, the plaintiff was able to invest the entire lump sum and theoretically deduct monthly interest amounts which constitute the inflation factor (a built-in factor compounded annually). The new statute, in contrast, provides that the defendant carrier purchase an annuity with a present value lump sum (instead of paying to the plaintiff directly such lump sum) and the plaintiff receives only monthly sums, compounded annually at four percent increments. Additionally, the new statute requires that if the plaintiff should die prematurely, his family is not the 'beneficiary’ of a 'windfall,’ inasmuch as no portion of the award [other than future loss of earnings] continues to be payable to the injured plaintiff’s heirs.
"The Legislature, therefore mandated that the plaintiff’s heirs should not continue to receive any portion of the award which was attributable to future pain and suffering and medical expenses; such payments revert to the carrier’s benefit.
"The four percent provision merely constitutes a legislative [conservative] formula for attempting to make the plaintiff 'whole’ with respect to the annual payments which become eroded by inflation. If the payments were kept at an equal level without a four percent (or similar) annual increment, then the plaintiff’s annual 'equal’ payments would in actuality constitute ever-diminished benefits because each payment would be eroded by inflation. Hence, the four percent factor is merely a legislative attempt to keep the annual payments by the jury during the pre-verdict and pre-judgment aspects predicated upon admissible evidence and expert extrapolations.
"It is respectfully submitted that during the 'prima facie’ *400 aspects of the plaintiffs damages trial, the plaintiffs are entitled to have the jury consider evidence with respect to inflation, and that such entitlement is not emasculated by the 'four percent solution’ invented by the Legislature with respect to the payment of judgment aspects of the new statute. Patently, any other interpretation would constitute a 'double whammy’ against the injured plaintiff which was not intended by the Legislature and is tantamount to judicial legislation contrary to common sense, economic fairness, and the realities of the legislative scheme.” (Queller, Proof of Damages Under the New Laws, 21 Trial Law Q, 35, 40-41 [1990].)
Mr. Justice Gammerman of this court has authored an article about the unresolved questions posed by CPLR articles 50-A and 50-B. Regarding the issue that is now before this court, Justice Gammerman observed:
"Another unresolved issue created by Articles 50A and 50B relates to subdivision (d) of CPLR 4111 which provides in part: '* * * [i]n itemizing amounts intended to compensate for future damages the jury shall set forth the period of years of which such amounts are intended to provide compensation. In computing said damages, the jury shall be instructed to award the full amount of future damages, as calculated, without reducing to present value.’ Inasmuch as Articles 50A and 50B provide for a four percent increase in the periodic annual payments, what impact, if any, does this have on the right of plaintiff to introduce evidence of increases in the costs of medical, hospital or other therapeutic care? Did the legislature intend the four percent increase to preclude proof and consideration of the impact of inflation on future loss of earnings and medical and hospital expenses?
"There is no legislative history to assist in the resolution of this problem. It can be argued that the four percent increase in the Base Award for Structured Enforcement was merely a legislative device to compensate the plaintiff for what was lost as a result of not receiving the full amount of the award and that the plaintiff should be able to prove and claim future damages increased by inflationary factors. On the other hand, it may be maintained that the four percent increase was designed, together with the variable discount rate, to provide an appropriate net discount rate (discount rate minus inflation rate). Inasmuch as I suspect different trial judges will reach different conclusions, this issue will require appellate resolution.” (Gammerman, CPLR Articles 50A and 50B: Unresolved Questions, Trial Law Section Dig, No. 20, at 12.)
*401 In Ursini v Sussman (143 Misc 2d 727 [Sup Ct, NY County]), Mr. Justice Gammerman applied the provisions of CPLR article 50-A to a $5,000,000 award in a medical malpractice action. CPLR articles 50-A and 50-B are substantially the same. (See, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR art 50-B, 1991 Supp Pamph, at 726.) Importantly, at the trial of this action, Justice Gammerman permitted the economist to testify before the jury as to projections of future loss of earnings, and future expenses for custodial care, taking into account inflationary factors of 6% and 8%. Interestingly, in that case the economist, Conrad Berenson (the same economist whom plaintiff intends to call), had preliminarily computed future damages and reduced those losses to present value. However, Justice Gammerman asked the economist to recompute his figures, because the court was to make the reduction, and the jury was not to consider discounting the losses to present value. Thus, it is apparent that Mr. Justice Gammerman has resolved the unanswered question discussed in his article, in favor of the proposition that inflationary factors may be considered by the jury, and that articles 50-A and 50-B do not effect the jury’s calculation of damages.
Plaintiff has also provided to the court excerpts from the testimony of economist Conrad Berenson in two other trials. In Plotkin v State of New York (Ct Cl, Sept. 28, 1990, Weisberg, J., cl No. 76147), Mr. Berenson testified regarding loss of future earnings, using both a present value analysis as well as a projection including inflationary factors. However, it is not clear from the transcript whether CPLR article 50-B applied to that case. In Sanchez v Presbyterian Hosp. (Sup Ct, Bronx County, index No. 6833-88), Mr. Berenson testified regarding loss of future earnings, and he used an inflationary factor in his calculations. This case was governed by both CPLR 4111 (d) and CPLR article 50-A or article 50-B.
In Govic v New York City Tr. Auth. (US Dist Ct, SD NY, 89 Civ 7062), District Judge Dominick L. DiCarlo admitted testimony by Mr. Berenson regarding loss of future earnings, where Mr. Berenson employed both a present value analysis and an analysis including inflationary factors. Apparently, this was done out of some uncertainty as to the interpretation of article 50-A or 50-B, and so the Judge and the appellate courts would have both sets of figures to consider.
Defendants’ citation of Ebert v New York City Health & *402 Hosps. Corp. (NYLJ, Feb. 21, 1991, at 28, col 6 [Sup Ct, King County]) is inapposite. CPLR article 50-B did not apply to that case. Nor is defendants’ citation of Hudson v Manhattan & Bronx Surface Tr. Operating Auth. (150 Misc 2d 283) persuasive here. Defendants argue that although Hudson was not a CPLR article 50-A or 50-B case, Justice Gammerman’s comments in that case concerning the discount rate infer that the 4% increase factor built into CPLR 5031 or 5041 (e) represents inflation. This court cannot accept defendants’ leap in logic that the discussion in Hudson demonstrates that plaintiff should not be permitted to introduce inflationary factors for the jury’s consideration.
Defendants also cite Alisandrelli v Kenwood (923 F2d 844 [2d Cir 1990]), Harvey v Mazil Am. Partners Gezing Corp. (Sup Ct, NY County, index No. 20601/86), and have provided the court with a transcript of some colloquy that occurred on May 1, 1990 in the action Braun v Shaki (Sup Ct, Rockland County, index No. 1050/89). To the extent that these cases hold that preverdict testimony regarding inflation is not permitted by article 50-B, this court declines to follow those holdings.
In sum, the court concludes that CPLR article 50-B, and specifically, the 4% increase included in that article, refers only to the payment of the judgment. The 4% increase was intended to compensate a plaintiff for the fact that the value of the annual payment of the structured judgment is diminished by inflation. Article 50-B does not impact upon a jury’s calculation of plaintiff’s actual damages.
Accordingly, defendants’ motion to preclude any preverdict testimony regarding inflation is denied.