724 F.Supp. 235 (1989)
Michael ALISANDRELLI, Plaintiff,
v.
Martin S. KENWOOD, Individually, and d/b/a Franklin Associates, Defendants.
Martin S. KENWOOD and Franklin Associates, Third Party Plaintiffs,
v.
JIM HOLLENBECK ROOFING CORPORATION, Third Party Defendant.
No. 88 Civ. 8002(LLS).
United States District Court, S.D. New York.
November 6, 1989.
As Amended November 14, 1989.
Finkelstein, Levine, Gittelsohn and Tetenbaum, Newburgh, N.Y. (George A. Kohl, II, Elliot S. Tetenbaum, of counsel), for plaintiff.
Johnston McShane & Marantis, P.C., New York City (Bruce W. McShane, of counsel), for defendants.

OPINION AND ORDER
STANTON, District Judge.
Plaintiff moves in limine for an order that any judgment he recovers for future damages in excess of $250,000 not be structured pursuant to Article 50-B of the New York Civil Practice Law and Rules *236 ("CPLR"), §§ 5041-5049 (McKinney's 1989 Supp.). The motion is denied.

BACKGROUND
Plaintiff Michael Alisandrelli was working as a roofer when he was severely injured in a fall from the roof of the Squire Cinema, a movie theater owned by defendant Franklin Associates ("Franklin"). Alisandrelli commenced this diversity action against Franklin, and its managing partner, defendant Martin S. Kenwood, for violating N.Y. Labor Law § 240 subd. 1 (McKinney's 1986) and negligently causing his injuries. The defendants impleaded Alisandrelli's employer, Jim Hollenbeck Roofing Corporation ("Hollenbeck"), claiming that Hollenbeck is liable to them for any damages Alisandrelli recovers.
In an order dated September 22, 1989 this court by summary judgment granted plaintiff's claim under section 240 subd. 1 of the New York Labor Law and defendants' claim for indemnification from Hollenbeck. The only remaining issue is the amount of damages.
Plaintiff moves in limine for an order that any judgment he recovers for future damages in excess of $250,000 not be structured pursuant to Article 50-B of the CPLR.[1] He claims that Article 50-B is procedural in nature, and thus should not be applied by a federal court exercising diversity jurisdiction under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny. Accordingly, he urges that any judgment he recovers should, in accordance with the federal practice[2], be entered in a lump sum.
The motion is denied.

DISCUSSION

1. Erie and its progeny
The Rules of Decision Act states, "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652.
In Erie, the Court overturned the prior rule of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865 (1842), that federal courts sitting in diversity need not, in matters of "general jurisprudence", apply the nonstatutory law of the state. The Court in Erie noted that Swift had led to the undesirable results of discrimination in favor of noncitizens, prevention of uniformity in the administration of state law, and forum shopping. Erie, 304 U.S. at 74-77, 58 S.Ct. at 820-822. Thus, the Court held, "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." Id. at 78, 58 S.Ct. at 822.
In Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the issue was "whether, when no recovery could be had in a State court because the action is barred by the statute of limitations, a federal court in equity can take cognizance of the suit because there is diversity of citizenship between the parties." Id. at 107, 65 S.Ct. at 1469. The Court held that the state statute of limitations barred the suit:
But since a federal court adjudicating a State-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.
* * * * * *

*237 In essence, the intent of that [Erie] decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. Id. at 108-09, 65 S.Ct. at 1469-70.
In Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) the Court refined York's "outcome-determinative" test. The issue in Byrd was whether a federal court exercising diversity jurisdiction was obliged to apply a state rule requiring the judge, rather than the jury, to determine whether an employer was immune from an employee's claim under the state workmen's compensation law. The Court found the state rule to be "merely a form and mode of enforcing the immunity, Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, and not a rule intended to be bound up with the definition of the rights and obligations of the parties." Id. at 536, 78 S.Ct. at 900. Nonetheless,
were "outcome" the only consideration, a strong case might appear for saying that the federal court should follow the state practice.
But there are affirmative countervailing considerations at work here. The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction. An essential characteristic of that system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence  if not the command  of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury. Jacob v. New York, 315 U.S. 752 [62 S.Ct. 854, 86 L.Ed. 1166 (1942)]. The policy of uniform enforcement of state-created rights and obligations, see, e.g., Guaranty Trust Co. v. York, supra, cannot in every case exact compliance with a state rule  not bound up with rights and obligations  which disrupts the federal system of allocating functions between judge and jury. Herron v. Southern Pacific Co., 283 U.S. 91 [51 S.Ct. 383, 75 L.Ed. 857 (1931)]. Thus the inquiry here is whether the federal policy favoring jury decisions of disputed fact questions should yield to the state rule in the interest of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court. Id. at 537-38, 78 S.Ct. at 900-01 (footnotes omitted).
Because of the strong federal interest, and the likelihood that the federal rule would not alter the outcome, the Court concluded that the federal rule should be applied.
In Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) the Court held that the manner of service of process in diversity actions is governed by Fed.R. Civ.P. 4(d)(1) rather than state law. The Court stated that when a Federal Rule of Civil Procedure "is in direct collision with the law of the relevant State", id. at 472, 85 S.Ct. at 1144-45, the federal rule should be applied if it "transgresses neither the terms of the Enabling Act nor constitutional restrictions." Id. at 471, 85 S.Ct. at 1144 (footnote omitted). Where there is no Federal Rule of Civil Procedure directly on point, "the message of York itself is that choices between state and federal law are to be made not by application of any automatic, `litmus paper' criterion, but rather by reference to the policies underlying the Erie rule". Id. at 467, 85 S.Ct. at 1141 citing York, 326 U.S. at 108-112, 65 S.Ct. at 1469-1471. Those policies are the "discouragement of forum shopping and avoidance of inequitable administration of the laws." Id. at 468, 85 S.Ct. at 1142 (footnote omitted).
Thus, in determining whether to apply Article 50-B here, Erie and its descendants instruct that several factors are of consequence: (1) whether application of the rule affects the outcome of the litigation; (2) the likelihood of inviting forum shopping; (3) whether divergent state and federal rules will cause inequitable administration of the laws; and (4) the existence of an *238 overriding federal interest in the application of the federal rule. See Jarvis v. Johnson, 668 F.2d 740, 743-44 (3rd Cir. 1982).

2. The CPLR provisions
In 1985 the New York State Legislature, in response to a liability insurance crisis, enacted Article 50-A (CPLR §§ 5031-5039) (Chapter 294, Laws of 1985). Article 50-A requires that a structured judgment be entered when a plaintiff in a medical, dental or podiatric malpractice action recovers more than $250,000 in future damages. The Governor's Program Memorandum (reprinted in New York State Legislative Annual 1985, pp. 131-34) explains that the purpose of the structured judgment is to moderate the cost of medical malpractice premiums, while assuring adequate and fair compensation for injured persons:
The bill would require the payment of large awards of future damages in medical malpractice actions in periodic installments, rather than in a single lump sum. The injured party is thereby guaranteed that compensation for future health care costs, lost earnings and other needs will be available to meet those expenses as they arise. Although the interest earned on a lump sum judgment is taxable to the plaintiff, the entire amount received in periodic installments can be received taxfree. Benefits accrue, as well, to the defendant/insurer: paying a judgment in periodic installments reduces the overall cost of the judgment by permitting the insurer to retain and invest the balance of the award before the installments come due. Some additional savings result from relieving the defendant from the obligation to make payments toward the plaintiff's future health care and other non-economic expenses in the event of the plaintiff's death. Under this bill, the defendant would be required to make all payments allocable to future loss of earnings to protect the interests of the plaintiff's family; only the obligation to make payments allocable to health care and non-economic losses (e.g. pain and suffering) would terminate if the plaintiff died before the entire schedule of payments was paid. A periodic payment approach was first recommended in New York in 1976 by the McGill Panel on Medical Malpractice and has been adopted, in various forms, by several other states. Id. at 132.
In 1986 the New York State Legislature enacted Article 50-B, (Chapter 682, Laws of 1986), which extends the requirement of structured judgments to personal injury, wrongful death, and property damage actions where the plaintiff recovers more than $250,000 in future damages. Article 50-B tracks the provisions of Article 50-A. See Governor's Approval Memorandum (reprinted in New York State Legislative Annual 1986, p. 289) ("This structured award provision is based on a similar provision enacted last year for medical malpractice actions."); see also Siegel, Practice Commentaries to CPLR § 5041, p. 686 (McKinney's 1989 Supp.) ("the two articles are, with minute exceptions ... in every particular the same").
Section 5041(a) provides that when a plaintiff recovers more than $250,000 in future damages, the court shall enter a judgment in lump sum for the first $250,000. After making certain statutory adjustments prescribed in sections 5041(b)-(d), the court then enters a judgment "for the amount of the present value of an annuity contract that will provide for the payments of the remaining amounts of future damages in periodic installments." CPLR § 5041(e). The court, as part of its judgment, directs that the "defendants and their insurance carriers shall be required to offer and to guarantee the purchase and payment of such an annuity contract."[3]Ibid.
*239 The statute requires the judgment debtors to post security "in an amount necessary to secure payment for the amount of the judgment for future periodic installments within thirty days after the date the judgment is entered." Id. § 5043(a). If security is not posted, the plaintiff can petition for an order requiring the judgment debtors to post security. Id. § 5043(b). If a judgment debtor fails to make a payment under the annuity contract, the plaintiff may "petition the court which rendered the original judgment for an order requiring payment by the judgment debtor of the outstanding payments in a lump sum." Id. at § 5044. If the plaintiff "can establish that the continued payment of the judgment in periodic installments will impose a hardship, the court may, in its discretion, order that the remaining payments or a portion thereof shall be made to the judgment creditor in a lump sum." Id. at § 5046.
By extending the requirement of structured judgments to personal injury, wrongful death and property damage actions, the New York State Legislature sought to *240 achieve the same goals that motivated it to require structured judgments in malpractice actions: diminishing the cost of insurance premiums while assuring adequate and fair compensation for injured persons.

3. Application of the Erie factors to this case

a. Effect of application of the state or federal rule on the outcome on the litigation

Plaintiff's right to recover for his personal injuries is one existing under New York State law. New York has conditioned its enforcement by requiring a structured judgment when the plaintiff recovers more than $250,000 in future damages. If it did not apply Article 50-B here, this court would "substantially affect the enforcement of the right as given by the State." York, 326 U.S. at 109, 65 S.Ct. at 1470. Accordingly, the rule is outcome determinative within the meaning of York.

b. Forum shopping

If Article 50-B were not applied in the federal courts, an incentive for forum shopping would result. Plaintiffs often prefer to receive their damage awards in a lump sum, rather than in periodic instalments under a structured judgment. Thus, plaintiffs who anticipate recovering more than $250,000 in future damages would, if possible, sue in federal court. This factor weighs in favor of applying Article 50-B.

c. Inequitable administration of the laws

Failing to apply Article 50-B here would result in the inequitable administration of the laws by allowing a plaintiff who recovered more than $250,000 in future damages in federal court to avoid the entry of a structured judgment "solely because of the fortuity that there is diversity of citizenship between the litigants." Walker v. Armco Steel Corp., 446 U.S. 740, 753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980). This factor also weighs in favor of application of Article 50-B.

d. State and Federal interest

Plaintiff argues that there is a strong federal interest against applying the state rule:
[I]f this Court were to apply the provisions of CPLR 5041 et. seq. to any verdict for future damages, in excess of $250,000, which the plaintiff may receive in this action, this Court could forseeably be obliged to entertain repeated enforcement proceedings (each of which could require evidentiary hearings to resolve) for many years after the judgment is entered. Therefore, it is quite possible that this case could not come to an ultimate conclusion until many years after the jury verdict is rendered. And, according to the terms of the statute, this Court must make itself available to entertain the said enforcement proceedings. It is respectfully submitted that the Federal Courts are neither obliged to, nor should they apply CPLR Sections 5041 et. seq., to any verdict which a plaintiff may obtain, because said statute improperly imposes an unreasonable burden upon the docket and the administration of the Federal Court system. (Plaintiff's trial memo, pp. 4-5).
This argument misconstrues the nature of the inquiry. The Rules of Decision Act and Erie do not require rejection of a state rule simply because it would be more burdensome than the federal rule. Even if an advantage of a lump sum judgment is its convenience, that does not here present the degree of federal interest necessary to override application of state law. Cf. Byrd, 356 U.S. at 537, 78 S.Ct. at 900-901 (jury determination of factual disputes is an "essential characteristic" of the federal system). Absent such an interest, state law will usually be applied.[4]
*241 Here, there is a strong state interest behind the structured judgment rule. As stated above, Article 50-B was enacted in response to a liability insurance crisis. Its goals were to attain more moderate insurance premiums while still assuring fair and adequate compensation for injured persons.
Feinstein v. Massachusetts General Hospital, 643 F.2d 880 (1st Cir.1981) is instructive. There, the First Circuit held that the Erie doctrine required a federal district court sitting in diversity to refer an action for malpractice arising under Massachusetts law to a medical malpractice tribunal pursuant to Mass.Gen.Laws ch. 231, § 60B. The Court stated:
Mass.Gen. Laws chapter 231, section 60B was enacted during a nationwide "medical malpractice insurance crisis" in which a dramatic increase in the volume and amount of malpractice claims and awards caused insurance rates for physicians to surge and made malpractice coverage very difficult for many doctors to obtain. See Redish, Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications, 55 Tex.L. Rev. 759, 759-63 (1977); Comment, An Analysis of State Legislative Responses to the Medical Malpractice Crisis, 1975 Duke L.J. 1417. According to the Supreme Judicial Court, the statute was adopted "to discourage frivolous claims whose defense would tend to increase premium charges for medical malpractice insurance," Austin v. Boston University Hosp., supra, 372 Mass. [654] at 655 n. 4, 363 N.E.2d [515] at 516 n. 4 [1977], "as part of a comprehensive package designed to ensure the continued availability of medical malpractice insurance at a reasonable cost." Paro v. Longwood Hospital, 373 Mass. 645, 647, 369 N.E.2d 985, 987 (1977). Id. at 885.
Accepting as a premise the policy determination made in the Massachusetts legislation, we conclude that refusing to apply the Massachusetts medical malpractice statute in the federal courts would undercut Massachusetts' efforts to remedy the insurance crisis that prompted passage of the statute, a result that is inconsistent with the principles of federalism underlying the Rules of Decision Act and the Erie decision. Id. at 887, citing Erie, 304 U.S. at 78-80, 58 S.Ct. at 822-823 and Redish & Phillips, Erie and The Rules of Decision Act: In Search of the Appropriate Dilemma, 91 Harv.L. Rev. 356, 370 (1977); Ely, The Irrepressible Myth of Erie, 87 Harv.L.Rev. 698, 708-09 n. 86, 716 n. 126. Id. at 885-86.
Accord, Seoane v. Ortho Pharmaceuticals, Inc., 660 F.2d 146, 149 n. 4 (5th Cir. 1981), aff'g, 472 F.Supp. 468 (E.D.La.1979); DiAntonio v. Northampton-Accomack Memorial Hospital, 628 F.2d 287 (4th Cir. 1980); Edelson v. Soricelli, 610 F.2d 131 (3rd Cir.1979); Stoner v. Presbyterian University Hospital, 609 F.2d 109 (3d Cir. 1979) (per curiam); Hines v. Elkhart General Hospital, 603 F.2d 646 (7th Cir.1979); Woods v. Holy Cross Hospital, 591 F.2d 1164 (5th Cir.1979); Knoblett v. Kinman, 623 F.Supp. 805 (S.D.Ind.1985); DiFilippo v. Beck, 520 F.Supp. 1009 (D.Del.1981); Kanouse v. Westwood Obstetrical & Gynecological Associates, 505 F.Supp. 129 (D.N. J.1981); Davison v. Sinai Hospital, 462 F.Supp. 778 (D.Md.1978), aff'd, 617 F.2d 361 (4th Cir.1980); Byrnes v. Kirby, 453 F.Supp. 1014 (D.Mass.1978); Wells v. McCarthy, 432 F.Supp. 688 (E.D.Mo.1977); Marquez v. Hahnemann Medical College & Hospital, 435 F.Supp. 972 (E.D.Pa.1976); Flotemersch v. Bedford County General *242 Hospital, 69 F.R.D. 556 (E.D.Tenn.1975); contra Wheeler v. Shoemaker, 78 F.R.D. 218 (D.R.I.1978); Hibbs v. Yashar, 522 F.Supp. 247 (D.R.I.1981).[5]
The rationale of Feinstein is persuasive, and applies here.

CONCLUSION
Because failure to apply the state statute would substantially affect the enforcement of a state right, invite forum shopping and the inequitable administration of the law, and undercut the strong state interest in moderating insurance premiums while assuring fair and adequate compensation to injured persons, the state law will be applied.
Plaintiff's motion in limine for an order that any judgment he recovers for future damages in excess of $250,000 not be structured in accordance with Article 50-B of the CPLR is denied.
NOTES
[1] Plaintiff's motion presents a live controversy since the parties agree that Alisandrelli's recovery for future damages will likely be substantially in excess of $250,000, and since its resolution affects trial matters such as the receipt of evidence and the form of the jury's verdict.
[2] There is no Federal Rule of Civil Procedure requiring the entry of a lump sum judgment. Rule 54(a), which defines the term "judgment", states, "`Judgment' as used in these rules includes a decree and any order from which an appeal lies. A judgment shall not contain a recital of pleadings, the report of a master, or the record of prior proceedings."
[3] The full text of section 5041 provides:

In order to determine what judgment is to be entered on a verdict in an action to recover damages for personal injury, injury to property or wrongful death under this article, and not subject to article fifty-A of this chapter, the court shall proceed as follows:
(a) The court shall apply to the findings of past and future damages any applicable rules of law, including set-offs, credits, comparative negligence pursuant to section fourteen hundred eleven of this chapter, additurs, and remittiturs, in calculating the respective amounts of past and future damages claimants are entitled to recover and defendants are obligated to pay.
(b) The court shall enter judgment in lump sum for past damages, for future damages not in excess of two hundred fifty thousand dollars, and for any damages, fees or costs payable in lump sum or otherwise under subdivisions (c) and (d) of this section. For the purposes of this section, any lump sum payment of a portion of future damages shall be deemed to include the elements of future damages in the same proportion as such elements comprise of the total award for future damages as determined by the trier of fact.
(c) Payment of litigation expenses and that portion of the attorney's fees related to past damages shall be payable in a lump sum. Payment of that portion of the attorney's fees related to future damages for which, pursuant to this article, the claimant is entitled to a lump sum payment shall also be payable in a lump sum. Payment of that portion of the attorney's fees related to the future periodically paid damages shall also be payable in a lump sum, based on the present value of the annuity contract purchased to provide payment of such future periodically paid damages pursuant to subdivision (e) of this section.
(d) Upon election of a subrogee or a lien holder, including an employer or insurer who provides workers' compensation, filed within the time permitted by rule of court, any part of future damages allocable to reimbursement of payments previously made by the subrogee or the lien holder shall be paid in lump sum to the subrogee or the lien holder in such amount as is calculable and determinable under the law in effect at the time of such payment.
(e) With respect to awards of future damages in excess of two hundred fifty thousand dollars in an action to recover damages for personal injury, injury to property or wrongful death, the court shall enter judgment as follows:
After making any adjustment prescribed by subdivisions (b), (c) and (d) of this section, the court shall enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages in periodic installments. The present value of such contract shall be determined in accordance with generally accepted actuarial practices by applying the discount rate in effect at the time of the award to the full amount of the remaining future damages, as calculated pursuant to this subdivision. The period of time over which such periodic payments shall be made and the period of time used to calculate the present value of the annuity contract shall be the period of years determined by the trier of fact in arriving at the itemized verdict; provided, however, that the period of time over which such periodic payments shall be made and the period of time used to calculate the present value for damages attributable to pain and suffering shall be ten years or the period of time determined by the trier of fact, whichever is less. The court, as part of its judgment, shall direct that the defendants and their insurance carriers shall be required to offer and to guarantee the purchase and payment of such an annuity contract. Such annuity contract shall provide for the payment of the annual payments of such remaining future damages over the period of time determined pursuant to this subdivision. The annual payment for the first year shall be calculated by dividing the remaining amount of future damages by the number of years over which such payments shall be made and the payment due in each succeeding year shall be computed by adding four percent to the previous year's payment. Where payment of a portion of the future damages terminates in accordance with the provisions of this article, the four percent added payment shall be based only upon that portion of the damages that remains subject to continued payment. Unless otherwise agreed, the annual sum so arrived at shall be paid in equal monthly installments and in advance.
(f) With the consent of the claimant and any party liable, in whole or in part, for the judgment, the court shall enter judgment for the amount found for future damages attributable to said party as such are determinable without regard to the provisions of this article.
[4] See Jarvis, 668 F.2d at 744 n. 4:

A review of Supreme Court cases involving the Rules of Decision Act, where there was no direct conflict between state law and any Federal Rule of Civil Procedure, indicates that state law has generally been applied absent any strong countervailing interest in applying the federal rule. See Walker, supra (federal court must apply state law on tolling of statute of limitations); Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) (same); Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (federal court must apply state law on enforceability of arbitration agreement); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (federal court must apply state statute requiring plaintiff to post bond in shareholder's derivative action); Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) (federal court must apply state law barring suits by corporations not qualified to do business in the state); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (federal court must apply state conflict-of-law rules). Cf. Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) (countervailing federal interest in affording jury trial).
[5] In Seck v. Hamrang, 657 F.Supp. 1074 (S.D.N. Y.1987) this court declined to follow the rationale of Feinstein on the ground that it was decided before the extensive amendments to Fed.R.Civ.P. 16. Those amendments, and in particular the amendment to Fed.R.Civ.P. 16(c)(7), were held to conflict with the New York State statute requiring referral to a medical malpractice panel. Here, there is no conflicting Federal Rule of Civil Procedure.