**Steven GRAVATT and Delores Gravatt, Plaintiffs,**

v.

**The CITY OF NEW YORK, Simpson & Brown, Inc., N. Massand, P.E., L.S., P.C., a/k/a Nanik Massand, P.E., Barge "ABC" and Barge Def, their engines, boilers, tackle, etc., in rem, Defendants.**

**No. 97 Civ. 0354(RWS).**

United States District Court, S.D. New York.

June 18, 1999.

Waesche, Scheinbaum & O'Regan, P.C., New York City, Nicholas P. Giuliano, of counsel, for plaintiffs.

Baer Marks & Upham, New York City, Eugene R. Scheiman, Daniel J. Friedman, of counsel, for defendant N. Massand.

Mauro & Goldberg, Great Neck, NY, Barbara D. Goldberg, of counsel, for defendant N. Massand.

*OPINION*

SWEET, District Judge.

Plaintiff Steven Gravatt ("Gravatt") seeks to settle a judgment in this action in which he was awarded substantial damages against the defendants the City of New York, Simpson & Brown, Inc. and N. Massand P.C. ("Massand"). *See Gravatt v. City of New York,* 1999 WL 111922 (S.D.N.Y. March 3, 1999). His proposed judgment is opposed by defendant Massand on the grounds that the judgment should be structured in accordance Article 50–B of the New York Civil Practice Law and Rules (CPLR) §§ 5041–5049 ("Article 50–B"). For the reasons set forth below, Article 50–B will be applied.

This motion presents an instance where an easy assumption may well constitute a deep pitfall. Although it has been accepted wisdom that Article 50–B is to be applied by courts sitting in diversity jurisdiction, here jurisdiction over Gravatt's state law claims is pendent to Gravatt's federal claims as more fully set forth in *Gravatt v. City of New York,* 1998 WL 171491 (S.D.N.Y. April 10, 1998). That distinction, however, does not dictate a different result. Indeed, the principles articulated by the Supreme Court in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (*"Erie"*) apply equally in the context of pendent jurisdiction. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Baker v. Coughlin,* 77 F.3d 12, 15 (1996).

■ Pursuant to *Erie* and its progeny, federal courts sitting in diversity and/or pendent jurisdiction apply state substantive law and federal procedural

law. Thus, the issue here is whether the provisions of Article 50–B are to be considered procedural or substantive. The classification of a law as "substantive" or "procedural" for *Erie* purposes can be a "challenging endeavor." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). While courts (including this one) have consistently, albeit without explanation, applied Article 50–B in diversity actions, *see e.g., Damiano v. Exide Corp.*, 970 F.Supp. 222 (S.D.N.Y.1997); *In re New York Asbestos Litig.*, 847 F.Supp. 1086 (S.D.N.Y.1994); *In re Joint Eastern and Southern Districts Asbestos Litig.*, 798 F.Supp. 940 (E.D.N.Y.1992), *rev'd on other grounds*, 995 F.2d 343 (2d Cir.1993), the practice is relatively recent. Indeed, the State Legislature did not adopt Article 50–B until 1986.

The only reported decision cited to the Court that explicitly addresses whether Article 50–B is procedural or substantive is *Alisandrelli v. Kenwood*, 724 F.Supp. 235 (S.D.N.Y.1989), a thoughtful determination by the Honorable Louis L. Stanton in which he concluded that the federal court must apply Article 50–B in an appropriate diversity case. After applying the *Erie* factors, Judge Stanton held that "failure to apply [Article 50–B] would substantially affect the enforcement of a state right, invite forum shopping and the inequitable administration of the law, and undercut the strong state interest in moderating insurance premiums while assuring fair and adequate compensation to injured persons . . ." 724 F.Supp. at 242.

Gravatt maintains that the authority of *Alisandrelli* has been discredited by more recent New York State Court of Appeals decisions that describe Article 50–B as a procedural device. Specifically, Gravatt cites *Rohring v. City of Niagara Falls*, 84 N.Y.2d 60, 67, 638 N.E.2d 62, 63, 614 N.Y.S.2d 714, 715 (1994), for the proposition that "Articles 50–A and 50–B are technical administrative schemes intended to regulate and structure payment, and they should not be construed in such a way as to increase the underlying liability owed by defendants."

This language from the Court of Appeals does suggest that Article 50–B is a procedure by which judgments are to be entered. Arguably, the Article relates only to the method and timing of payments for damages and does not affect the assessment of the amount of damages awarded. *See Andrialis v. Snyder*, 159 Misc.2d 419, 603 N.Y.S.2d 670, 674 (Sup. Ct.1993); *Gambardelli v. Allstate Overhead Garage Doors*, 150 Misc.2d 395, 576 N.Y.S.2d 770 (Sup.Ct.1991). Judge Stanton posited that Article 50–B is "outcome determinative" within the meaning of *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), in that New York State has "conditioned" a plaintiff's right to recover for his personal injuries by requiring a structured judgment when the plaintiff recovers more than $250,000 in future damages. *See* 724 F.Supp. at 240. This contention is not entirely persuasive, however, in that despite Judge Stanton's suggestion that Article 50–B is "bound up" with the definition of rights and obligations, *Byrd v. Blue Ridge Rural Electric Cooperative*, 356 U.S. 525, 536, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), it is difficult to see why the requirement of a structured judgment does not fall within the ambit of *Hanna v. Plumer*, 380 U.S. 460, 467–68, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) where "procedure" was generally defined as "the judicial process for enforcing rights and duties recognized by substantive law."[1]

Ultimately, the essential thrust of Judge Stanton's opinion remains intact even in the face of *Rohring*. In its most recent

---

1. As the foregoing discussion illustrates, the question of whether to apply Article 50–B is a complex one, which raises substantial jurisprudential concerns. In the interest of the litigants to this proceeding, now hopefully entering its final phase, the temptation to plumb the depths of the issue will be resisted.

*Erie* decision, *Gasperini v. Center for Humanities, Inc.,* the Supreme Court considered the standard a federal court should employ to measure the alleged excessiveness of a jury's verdict in an action for damages based on state law, and held that the acceptable level for quantification of damages is too important for federal courts to treat it as procedural when choosing between federal and state law in diversity cases. 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659. At issue in *Gasperini* was a New York rule, CPLR § 5501(c), that allowed state appellate courts to review the size of jury verdicts and order a new trial when the jury's verdict "deviates materially from what would be reasonable compensation." Petitioner Gasperini contended that the standard of review was procedural insofar as it vested decision-making authority for reviewing jury verdicts in the New York appellate courts. The respondent, The Center for the Humanities, asserted that the standard of review was a substantive standard that must be applied in federal court under the principles of *Erie.* Writing for the majority, Justice Ginsburg explained that while § 5501(c) contained a "procedural instruction," the "State's objective is manifestly substantive." 518 U.S. at 429, 116 S.Ct. 2211.[2]

As part of the *Erie* analysis, Justice Ginsburg posed the question, "Would application of the [standard] … have so important an effect upon the fortunes of one or both of the litigants that failure to [apply] it would [unfairly discriminate against citizens of the forum State, or] be likely to cause a plaintiff to choose the federal court?" *Id.* at 428, 116 S.Ct. 2211 (*quoting Hanna* at 468 n. 9, 85 S.Ct. 1136). Justice Ginsburg concluded that § 5501(c) was "outcome-affective" in that a failure to apply it would encourage forum shopping

and promote the inequitable administration of the state's laws, and held that the federal trial court was required to apply the New York standard of review. *Id.* at 430–31, 116 S.Ct. 2211.

The same considerations appear to exist here. As Judge Stanton noted in *Alisandrelli,* if Article 50–B were not applied in the federal courts, "an incentive for forum shopping would result," as plaintiffs, often prefer, as does Gravatt, to receive their damage awards in a lump sum, rather than in periodic installments. 724 F.Supp. at 240. Moreover, failure to apply Article 50–B could result in the inequitable administration of the state's laws by allowing a plaintiff who recovered more than $250,000 in future damages in federal court to circumvent the entry of a structured judgment "solely because of the fortuity that there is diversity of citizenship between the litigants." *Id.* (*quoting Walker v. Armco Steel Corp.,* 446 U.S. 740, 753, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980)).

Although Article 50–B can present problems of incomprehensibility, even to the Court of Appeals, *see, e.g., Rohring,* 84 N.Y.2d at 67, 614 N.Y.S.2d at 715, 638 N.E.2d at 63 ("the statutory scheme of 50–B is technical and complicated"), and its application has been aptly described as "every judge's nightmare," *Singletary v. Three City Centre,* 158 Misc.2d 841, 601 N.Y.S.2d 649, 650 (Sup.Ct.1993), the desirability of uniformity outweighs the almost irresistible temptation to escape the complexities of the Article.

In an example of the perplexities of Article 50–B, Gravatt urges that because he has established liability against two defendants he is entitled to two payments of $250,000. In the absence of any authority, the Article will not be given this interpre-

---

**2.** Section 5501(c), like Article 50–B, was enacted in 1986 as part of a series of tort reform measures. In enacting § 5501(c), "the legislature sought, particularly, to curtail medical and dental malpractice, and to contain 'already high malpractice premiums.'" *Gasperi-*

*ni,* 518 U.S. at 423 n. 3, 116 S.Ct. 2211 (citation omitted). The purpose of Article 50–B "is to moderate the cost of malpractice premiums, while assuring adequate and fair compensation for injured persons." *Alisandrelli,* 724 F.Supp. at 238 (citation omitted).

tation since the defendants are jointly and severally liable.

With some misgiving, Article 50–B will be applied to Gravatt. With respect to Mrs. Gravatt, however, Article 50–B will not be applied inasmuch as her future damages of $100,000 are not in excess of $250,000. *See* CPLR § 5041(b); *Flynn v. General Motors Acceptance Corp.,* 179 Misc.2d 555, 688 N.Y.S.2d 374 (Sup.Ct. 1998); *Peterson v. Zuercher,* 152 Misc.2d 684, 584 N.Y.S.2d 968 (Sup.Ct.1992).

The parties are directed to confer on the form of judgment submitted by Massand and to submit any counter orders by noon on June 23, 1999, in which event argument will be heard.

It is so ordered.